**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SHERRI MCCAIN, | : | Case No. 3:17-cv-402 |
| Plaintiff, | : | |
| vs. | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Sherri McCain brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on May 6, 2014, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Mark Hockensmith concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II.   Background

Plaintiff asserts that she has been under a "disability" since July 13, 2013. She was forty-four years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a limited education. *See id.* §§ 404.1564(b)(3), 416.964(b)(3).[2]

### A.   Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Hockensmith that she has pain in her back and legs that "feels like somebody's … twisting the muscle." (Doc. #6, *PageID* #271). Her muscles get "really, really tight" and sore. *Id.* at 272. She estimated she could walk 1 or 2 blocks before her pain is too unbearable. *Id.* If she does too much, she has to sit down. *Id.* But, she can only sit for 25 minutes before needing to stand up to stretch. *Id.* at 281. She used a cane for a little bit but does not think it helped. *Id.* at 272.

She has issues with her ankle: "sometimes I trip because it seems like my ankle just goes in when I'm walking." *Id.* at 270. She also has a sharp pain shooting down her left leg twice a week. *Id.* at 271. When it happens, she has to stop moving until the muscle spasm goes away. *Id.*

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

Plaintiff saw Dr. Soin for pain management. *Id.* at 272-73. He tried to help her with anti-inflammatory medications and three injections. *Id.* at 273. Plaintiff did not believe his methods worked and she changed doctors. *Id.* Her new doctor, Dr. Probst, diagnosed sciatica with nerve damage and suggested putting screws in the right side of her back to help with the pain. *Id.*

Plaintiff had left carpal tunnel release and ulnar release surgery in September 2014. *Id.* In June 2015, she had surgery on her right side. *Id.* Unfortunately, she has had some lingering issues. She does not have a lot of strength in her hands, and if she bends her wrist for too long, her hands go numb. *Id.* at 275.

Plaintiff has struggled with some mental health issues. After she stopped working, she gained weight and began to feel bad about herself. *Id.* at 276. She has trouble being around a lot of people and started experiencing paranoia. *Id.* She has mood swings— "Either I'm real, real mad or real irritated or I just be quiet, don't talk, just everybody be still." *Id.* at 281. At the time of the hearing, she was taking Zoloft. *Id.* at 276.

During the day, she sometimes visits her 80-year-old neighbor. *Id.* at 277. She also does chores in the house. For example, she vacuums every day. But, she can only vacuum for 3 to 4 minutes at a time before needing to sit down and take a break. *Id.* at 280, 282. Plaintiff has a driver's license and drives two or three times a week. *Id.* at 265.

**B.    Medical Opinions**

    *i.    Amol Soin, M.D.*

Plaintiff's treating physician, Dr. Soin, completed two medical impairment questionnaires. In January 2015, he indicated that Plaintiff has sciatica and thoracic or

3

lumbosacral neuritis or radiculitis. *Id.* at 1213. She has ongoing chronic pain and her health status is poor but stable. *Id.* Dr. Soin opined she could frequently lift and/or carry 6 to 10 pounds. *Id.* at 1214. Her ability to stand, walk, and sit are affected by her impairments. *Id.* Her ability to push, pull, bend, and reach are extremely limited. *Id.*

In June 2016, Dr. Soin indicated that, upon examination or testing, Plaintiff exhibited positive straight leg raising; severe burning or painful dysesthesia; and an inability to ambulate effectively. *Id.* at 1281. He opined that her pain is severe. *Id.* Further, she can stand for 15 minutes at a time and cannot occasionally or frequently lift/carry any weight. *Id.*

   ii. *Joseph Cools, Ph.D., & Vicki Warren, Ph.D.*

Dr. Cools reviewed Plaintiff's records in January 2015. *Id.* at 291-306. He found that she had three severe impairments— "Disorders of Back–Discogenic and Degenerative"; "Other and Unspecified Arthropathies"; and Carpal Tunnel Syndrome— and three non-severe impairments—Affective Disorders; Anxiety Disorders; and Substance Addiction Disorders. *Id.* at 300. Dr. Cools opined Plaintiff has a mild restriction in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. *Id.*

In May 2015, Dr. Warren reviewed Plaintiff's records and affirmed Dr. Cools's findings. *Id.* at 325-37.

4

> iii.  *Diane Manos, M.D., & Venkatachala Sreenivas, M.D.*

Dr. Manos reviewed Plaintiff's records in December 2014. *Id.* at 291-306. She opined Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. *Id.* at 302-03. She could sit for 6 hours in an 8-hour workday and stand and/or walk for 6 hours. *Id.* at 303. She could not climb ladders, ropes, or scaffolds. *Id.* She could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs. *Id.* Because of her carpal tunnel syndrome, she could frequently handle and finger. *Id.* at 304. Dr. Manos concluded that Plaintiff is not under a disability. *Id.* at 305.

In April 2015, Dr. Sreenivas reviewed Plaintiff's records and affirmed most of Dr. Manos's findings. *Id.* at 325-37. Dr. Sreenivas found that Plaintiff could frequently kneel and crouch. *Id.* at 335.

## III.  **Standard of Review**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ

5

are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since July 13, 2013.

Step 2: She has the severe impairments of degenerative disc disease, residuals from a right ankle fracture, bilateral carpal tunnel syndrome, residuals from a left ulnar release surgery, and obesity.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except that she cannot climb ladders, ropes or scaffolds, can … occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch and crawl. She is further limited to frequent handling and fingering bilaterally and frequent use of foot controls on the right, and occasional pushing or pulling with the lower extremities."

Step 4: She is capable of performing past relevant work as a press operator

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 235-47). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 246.

**V.      Discussion**

Plaintiff contends that the ALJ failed to adequately weigh the medical opinions. The Commissioner disagrees.

**A.      Medical Opinions**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the

8

weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

In the present case, ALJ Hockensmith assigned the opinions of Plaintiff's treating physician, Dr. Soin, little weight. (Doc. #6, *PageID* #244). He did not mention the treating physician rule or otherwise indicate that he considered whether Dr. Soin's opinions were due controlling weight. Indeed, his only reference to the rule comes earlier in his decision: "I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.* at 240. Without a separate description of the legal criteria the ALJ applied, his decision must be scrutinized to determine whether he "applied the correct legal criteria" when weighing the medical source opinions. *Bowen*, 478 F.3d at 745-46.

The ALJ addressed Dr. Soin's two opinions separately. Looking first at his 2015 opinions, the ALJ gave several reasons for assigning them little weight. The ALJ found that Dr. Soin's "findings lack support from the objective record …." (Doc. #6, *PageID* #244). It is not clear if the ALJ is addressing the first condition of the treating physician rule—whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques—or the supportability factor. Under either, his conclusion, like that of the ALJ in *Gayheart*, is ambiguous. *Gayheart*, 710 F.3d at 377 ("the conclusion that Dr. Onady's opinions 'are not well-supported by any objective findings' is ambiguous."). "One cannot determine whether the purported problem is that

9

the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques, see 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions." *Id.*

In addition, ALJ Hockensmith found that Dr. Soin's "findings lack support … from other opinion statements from treating clinicians." (Doc. #6, *PageID* #244). Although the ALJ is correct, there are also no opinions from other treating clinicians that contradict Dr. Soin's opinions. There are no other opinions from other treating clinicians. The Regulations do not require a treating physician's opinion be supported by another treating clinician's opinion in order to be given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). To the extent the ALJ is rejecting Dr. Soin's opinion on this basis, the ALJ is demanding more of Dr. Soin than is required by the Regulations.

Next, ALJ Hockensmith discounted Dr. Soin's opinions that Plaintiff has extreme limitations in bending and reaching because they are "inconsistent with the claimant's daily activities, including her ability to attend to chores, shopping and childcare duties." (Doc. #6, *PageID* #244). The ALJ could be referring to the second condition of the treating physician rule—whether the opinion is not inconsistent with the other substantial evidence in the case record—or he could be referring to the consistency factor. Regardless, substantial evidence does not support the ALJ's conclusion. Plaintiff reported that she is able to complete some chores. For instance, she vacuums regularly. However, she is only able to vacuum for three to four minutes at a time and then needs a break to sit down. *Id.* at 282. She also washes dishes and has to sit down to let her back

relax before she can start again. *Id.* at 280. She does not have to reach very high to put dishes away. *Id.* at 279. She also explained that although her carpal tunnel surgeries initially helped, after a little while, she began having problems with her upper body. *Id.* at 274. When she tries to wash dishes or fold laundry, her upper body gets tired. *Id.* Further, she does not have a lot of strength in her hands. *Id.*

Turning to shopping, Plaintiff testified that she cannot walk around a store for very long. *Id.* at 272. She has picked up a 24-pack of water but it hurt her back. *Id.* at 279. She is able to pick up a 12-pack without problems. *Id.* Last, concerning childcare duties, Plaintiff testified that she babysat her sister's three children—ages 3, 6, and 9—five days a week while her sister was working. *Id.* at 267. She "[j]ust made sure they had their food and stuff …. They mostly just play." *Id.* She was able to change the youngest's diapers without problems but she had difficulty picking up her niece (who did not like to walk on her own). *Id.* at 269-70. These activities, considered together, are not inconsistent with Dr. Soin's opined limitations.

Further, the ALJ fails to mention that Dr. Soin's opinion is consistent with Dr. Propst's treatment notes that indicate Plaintiff had decreased flexion, extension, and lateral bend in her spine, ribs, and pelvis. *Id.* at 1246, 1254, 1260, 1269, 1276. His opinions are likewise consistent with his own treatment notes. For instance, he documented that she had pain to palpation in her lower lumbar spine, her finger to floor flexion was less than 90 degrees and was limited by pain and stiffness, her extension to 30 degrees was limited due to pain, and her lateral bending to 25 degrees was limited by

pain. Her straight leg raise was positive and it elicited ipsilateral pain in the lower lumbar spine. *Id.* at 1170, 1188, 1193, 1200, 1203.

Last, the ALJ found that although Dr. Soin's opined Plaintiff's ability to sit, stand, and walk were limited, "he did not provide specifics …." *Id.* at 244. He accurately noted that Dr. Soin's "records were illegible with regard to that information …." *Id.* It was reasonable to assign Dr. Soin's opinions—on Plaintiff's ability to sit, stand, and walk—less weight based on the lack of explanation. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The ALJ did not discuss the treating physician's rule in his evaluation of Dr. Soin's 2016 opinions. Nonetheless, he did provide some reasons for assigning the opinions little weight. He found, "[Dr. Soin's] opinion relies on a faulty premise as there is no evidence that the claimant's gait difficulties rise to the level of an inability to ambulate effectively. The claimant was not prescribed a walker or other assistive device and while there is evidence of an antalgic gait at times with isolated instances of cane use, there is no significant pattern of evidence to support such an extreme allegation." (Doc. #6, *PageID* #244). This conclusion ignores the majority of Dr. Soin's treatment notes that indicate Plaintiff reported that standing and/or walking increased her pain and prevented her from walking more than a few feet (up to several blocks). *Id.* at 1168, 1185, 1187, 1191, 1198, 1202. Similarly, Dr. Probst consistently documented that Plaintiff had an antalgic gait. *Id.* at 1254, 1260, 1269, 1276. The ALJ also ignores

12

Plaintiff's testimony that she does not use a cane because she did not think it helped. *Id.* at 272.

Next, the ALJ discounted Dr. Soin's opinion because, "[t]here is also little evidence to support the contention that the claimant can lift no weight. As noted above, the claimant is able to attend to a range of activities of daily living, including childcare and driving and while significant deficits were appreciated on a range of physical exams, none of them support such extreme limitations." *Id.* at 244. However, as explained in more detail above, Plaintiff's ability to do limited activities is not inconsistent with Dr. Soin's opinions. There is no suggestion from her activities that she can occasionally (up to 2.5 hours) lift and/or carry any weight. She testified that she can pick up a 12-pack of pop at the grocery store without problems. *Id.* at 279. However, she could "just barely able" to lift a 24-pack of water. *Id.* at 279-80. She also indicated that while she was babysitting, she had trouble carrying her niece because it "was just too much on [her] back." *Id.* at 270. These activities are not inconsistent with Dr. Soin's opinion.

ALJ Hockensmith further concluded, "To the extent that his opinion regarding the claimant's possible absenteeism and time of task is based on these extreme limitations, it is similarly unpersuasive." *Id.* at 244. Without further explanation, which the ALJ does not provide, this is simply a disagreement with Dr. Soin's opinion without grounding from evidence in the record.

Last, the ALJ discounted Dr. Soin's 2016 opinions because they "lack support from corroborating opinion evidence from other physicians and are undermined by evidence showing the claimant's conditions improved with surgery and other treatment."

13

*Id.* This harkens back to the ALJ's earlier mistake: there are no other opinions from treating physicians, and that alone does not detract from Dr. Soin's opinions. Further, while some of Plaintiff's impairments may have improved, Dr. Soin consistently noted that conservative methods of treatment—over-the-counter medication, NSAIDS, activity modification, home-exercise—were unsuccessful in treating Plaintiff's persistent pain. *Id.* at 1171-72, 1178, 1189, 1193, 1201.

The reasons provided by ALJ Hockensmith do not amount to "good reasons" for rejecting Dr. Soin's opinions because they are not supported by substantial evidence. "The failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule . . . ." *Gayheart,* 710 F.3d at 377.

The ALJ assigned the State agency physicians' opinions "some partial weight." (Doc. #6, *PageID* #244). He found that evidence received after their review "indicates that some further restriction is necessary in terms of use of her right foot for foot controls and in pushing and pulling with her legs. Otherwise, however, the light exertional level is generally appropriate." *Id.* The ALJ also credited the physicians because, "[t]hese examiners possess Agency specific knowledge of standards and definitions and supported their analyses with citations to the objective evidence and a persuasive narrative." *Id.*

Plaintiff correctly points out that the ALJ mistakenly referred to these record-reviewing physicians as "State agency examiners." *Id.* at 243-44; *see* Doc. #7, *PageID* #1954 ("ALJ Hockensmith unduly elevated them in the regulatory hierarchy of opinions ….").

14

Moreover, Plaintiff accurately observed that the ALJ erred in finding that the State agency physicians supported their opinions with a persuasive narrative. The physicians' explanations are very limited—for instance, when asked to explain Plaintiff's postural limitations and how/why the evidence supports those conclusions, Dr. Sreenivas noted, "Ch LBP with radiculopathy, bilateral CTS." (Doc. #6, *PageID* #334).

Further, the ALJ erred by failing to apply the same level of scrutiny to reviewing physicians' opinions as he applied to treating source's opinion. *See Gayheart,* 710 F.3d at 379 (citing 20 C.F.R. § 404.1527(c); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (July 2, 1996)) ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires."). For example, the ALJ criticized Plaintiff's treating physician's opinion because it was not supported by any other treating clinician's opinion. However, the ALJ did not discount the State agency physicians' opinions because they were not supported by a treating clinician's opinion.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.      Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to

16

determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Sherri McCain was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

April 2, 2019	*s/Sharon L. Ovington*
	Sharon L. Ovington
	United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).